FILED
12/6/18 1:26 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

*************************************************************************

| | |
|---|---|
| IN RE: | Bktcy. 18-24606-TPA |
| MORIARTY CONSULTANTS, INC., | Chapter 11 |
| DEBTOR | |

*************************************************************************

| | |
|---|---|
| MORIARTY CONSULTANTS, INC., | Doc. # ____ |
| Movant, | Related Doc. # 4, 12 |
| v. | Hearing Date: 12/6/18 |
| FIRST NATIONAL BANK OF PENNSYLVANIA, | Hearing Time: 10:00 AM |
| Respondent. | |

*************************************************************************

### CONSENT ORDER RESOLVING EMERGENCY MOTION TO ENFORCE THE AUTOMATIC STAY

AND NOW, to wit this 6th day of December, 2018, the Court having considered the Debtor's Emergency Motion to Enforce the Automatic Stay, any responses filed thereto, and having held hearing thereon and considered the evidence presented, as well as the arguments of counsel, and being advised that this Order was consented to by all parties listed on the last page hereof, **IT IS HEREBY ORDERED, ADJUDGED, FOUND AND DECREED** as follows:

1. First National Bank of Pennsylvania ("Bank") contends that Moriarty Consultants, Inc., ("Debtor") obtained a loan from the Bank on or about May 16, 2011 (the "Loan"). The Loan is evidenced by, *inter alia*, a Business Loan Agreement dated May 16, 2011. The Bank also contends that the Debtor's principal, Arlinda Y. Moriarty ("Ms. Moriarty"), absolutely and unconditionally guaranteed Debtor's obligations to the Bank in connection with the Loan as set forth in the Commercial Guaranty dated May 16, 2011. The Business Loan Agreement, the Commercial Guaranty, and any other documents executed in connection with the Loan will hereinafter collectively be referred to as the "Loan Documents."

2. On or about September 14, 2018, the Bank contends that it validly accelerated the balance due and owing in connection with the Loan due to one or more "events of default" under the Loan Documents.

3. Debtor maintained a deposit account at the Bank (the "Bank Account"). The Bank contends that the Loan Documents grant the Bank, *inter alia*, a contractual right of setoff against the Bank Account. The Bank further contends that on November 28, 2018, it validly "setoff" against the Bank Account in the amount of $204,304.12 (the "Setoff").

4. Several hours after the Setoff, the Debtor commenced the above-captioned case by filing a voluntary petition under Chapter 11 of Title 11 of the U.S. Code, 11 U.S.C. § 101 et seq. Immediately upon the commencement of this case, Debtor filed its *Emergency Motion to Enforce the Automatic Stay* (Doc. # 4, the "Motion").

5. On November 29, 2018, an emergency hearing was held on the Motion, at which time counsel for the Debtor and the Bank appeared and advanced their respective clients' positions.[1]

6. By Order of Court dated November 30, 2018 (Doc. # 12, the "Emergency Order"), the Motion was granted in part on an interim basis. Among other rulings, the Court:

    a. Avoided and set aside a portion of the Setoff equal to $150,000.00 (the "Restored Funds") on an interim basis, without prejudice to the Bank's rights to challenge said interim avoidance at a later date; and

    b. Upheld a portion of the Setoff equal to $54,304.12 (the "Permitted Setoff Funds"), instructing the Bank to apply said funds to reduce the amount of the debt owed the Bank.

7. In the Emergency Order, the Court authorized the Debtor to use the Restored Funds to fund its payroll for the November 30, 2018, paydate, subject to certain terms and conditions detailed in the Order. The Bank and the Debtor coordinated the return of the Restored Funds to the Debtor, which allowed the Debtor to fund its November 30, 2018 payroll.

---

[1] Representatives of the Debtor were also present for portions of the emergency hearing.

8.      As of December 3, 2018, after application of the Permitted Setoff Funds against the balance owed on the Loan, the Bank contends that the balance owed it equals $221,013.75* (the "Indebtedness"), consisting of the following:

| Description | Amount |
|---|---|
| Principal | $220,213.73 |
| Interest to 12/3/18 | $    654.01 |
| Late Charges to 12/3/18 | $      62.01 |
| UCC Termination Fee | $      84.00 |
| Total | $221,013.75* |

**plus** any additional interest and late charges from December 3, 2018, forward, along with any other charges recoverable under the loan documents and other applicable law, including without limitation 11 U.S.C. § 506(b), including without limitation attorneys' fees and expenses.

9.      The parties have negotiated a resolution which they contend, if approved by the Court, will resolve the Motion, eliminate the need for the evidentiary hearing, and provide for a global resolution relative to the Loan, with the terms detailed immediately below.

10.     <u>Retention of Permitted Setoff Funds and Impact on Loan Status</u>. The Bank shall retain the Permitted Setoff Funds and has applied same to the outstanding balance owed in connection with the Loan. The Loan remains accelerated, and the full outstanding balance remains immediately due and payable, subject to the provisions of this Order.

11.     <u>Deposit Accounts</u>. Debtor shall continue to maintain its Bank Account at the Bank, and shall continue to direct its account debtors/customers to remit payments owed the Debtor into said account. The Debtor represents and warrants that it has no interest in any other deposit accounts other than the Bank Account at any other financial institution, except for an account maintained at Citizens Bank that is the subject of a "freeze" implemented by The United States District Court for The Western District of Pennsylvania, Civil Action No. 2:17-cv-00439-CB  The current balance in that account is approximately $60,000.00. In the event Debtor becomes permitted to access and/or use said funds, the Debtor agrees to immediately close said account and deposit the entire remaining balance into the Bank Account. Debtor shall not open any new deposit accounts at any other financial institution other than the Bank.

12.     <u>Replacement Liens</u>. As adequate protection for the Bank's interest in the cash collateral, the Bank is hereby granted security interests ("Replacement Liens") in all of the personal property assets of the Debtor which are or have been acquired, generated, or received by Debtor subsequent to the filing of the above-captioned bankruptcy case, including without limitation all of Debtor's accounts, chattel paper, deposit accounts, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments,

inventory, leasehold improvements, machinery, receivables, and all cash and non-cash proceeds thereof <u>to the extent of the diminution of the value of the Bank's collateral securing the Indebtedness</u>.  The Replacement Liens shall have the same validity, priority and extent (if any) as the lien(s) in favor of the Bank that existed at the time of the commencement of the above-captioned bankruptcy case.  The Replacement Liens granted in this Order are deemed perfected without the necessity for filing or execution of documents which might otherwise be required under non-bankruptcy law for the perfection of said security interests.  Such security interests and perfection shall be binding upon any subsequently appointed trustee either in Chapter 11 or any other Chapter of the Bankruptcy Code and upon all creditors of the Debtor who have extended or who may hereafter extend credit to it.  <u>Not included among said personal property assets is the Debtor's or the estate's interest in any claim(s) under Chapter 5 of the United States Bankruptcy Code that have not been waived pursuant to this Order.</u>

13. <u>Use of Cash</u>.  Debtor may use cash to the extent the same becomes available to the Debtor to pay ordinary and necessary business expenses from the present through the Maturity Date (defined below).  Debtor's professionals are preparing and shall present to Bank an operating budget ("Budget") covering the period from the present through the Maturity Date ("Term") which represents a projection of revenue collected and expenses expected for the business operated by the Debtor during the Term.[2]  Nothing in this Order or the Budget shall be construed as consent to subordinate the Bank's interest in cash or any other collateral to the interests of any third party.

14. <u>Discounted Loan Payoff and Maturity Date</u>.  Notwithstanding the current outstanding balance owed in connection with the Loan, the Bank agrees to accept additional funds totaling $145,695.88 (such that the total amount paid on account of the Loan, after factoring in the Permitted Setoff Funds, equals exactly $200,000.00) in full satisfaction of the balance due on the Loan, provided, however, that said funds are received by the Bank not later than thirty (30) calendar days from the date of this Order ("Maturity Date").

15. <u>Interim Payments</u>.  Debtor shall be allowed to make periodic payments towards the discounted Loan payoff referenced in Paragraph 14, prior to the Maturity Date, as cash flow allows.

16. <u>Payment Remittance</u>- Payment shall be sent by First Class U.S. Mail, postage prepaid, to the Bank at First National Bank of Pennsylvania, Attn:  Tiffany Cameron/SPL, 3014 East State Street, Hermitage, PA  16148, or Debtor shall authorize the Bank to debit the Bank Account on or in advance of the due dates.  All payments to be made pursuant to this Order must be actually received by the Bank by the respective due dates.

---

[2] Neither Ms. Moriarty nor any other individual under indictment, or any entity associated with any indictee, shall receive any compensation unless otherwise ordered by this Court.

17. <u>Application of Payments</u>- The Bank shall apply any payments received pursuant to this Order to the Indebtedness as the same may be in the best interests of the Bank, as determined by the Bank, subject to the provisions of this Order.

18. <u>Deadlines</u>. In the event any deadline for action under this Order falls on a weekend or Federal holiday, such deadline shall automatically be extended until the next business day.

19. <u>Waiver of Claims Against Bank</u>. In consideration of the covenants set forth herein, the Debtor, the bankruptcy estate, Ms. Moriarty, and Activity Daily Living Services, Inc., on behalf of themselves and their respective past or present officers, directors, members, shareholders, owners, agents, employees, affiliates, parents, subsidiaries, successors, heirs, representatives and assigns, have or may have against the Bank and/or its past or present officers, directors, members, shareholders, owners, agents, employees, representatives, affiliates, parents, subsidiaries, successors and assigns that arose from the beginning of time to the date hereof. It is the express intent of the parties that the foregoing release be broadly construed in favor of the Bank.[3]

20. <u>No Impact on Other Loans</u>. In addition to the Loan, the Debtor, Ms. Moriarty, and/or third party affiliates of the Debtor, are indebted to the Bank in connection with at least three (3) other loans. Nothing in this Order shall have impact whatsoever on any party's rights, duties, or obligations with respect to any other loans besides the Loan.

21. <u>Default and Cure Provisions</u>- With the exception of a failure to remit payment by the Maturity Date (for which Debtor has no right to cure), in the event the Debtor fails to strictly comply with any of the terms of this Order, the Bank shall give written notice of default to the Debtor and its undersigned bankruptcy counsel. Written notice shall be by email addressed to Debtor at KennanH@moriartyinc.com and Brianj@moriartyinc.com with copy (also by email) to the Debtor's undersigned bankruptcy counsel at Slampl@lampllaw.com. Notice shall be deemed "received" on the date the notice is transmitted via email if the notice is transmitted before 5:00 p.m. prevailing Pittsburgh time. Any notice(s) emailed after 5:00 p.m. prevailing Pittsburgh time shall be considered received the following day.

22. <u>Effect of Uncured Default</u>. If Debtor fails to cure any default(s) within three (3) business days following receipt of the notice, Debtor's authority to use cash pursuant to this Order will be terminated immediately without further notice or hearing, unless the Court authorizes usage of cash by separate Order, or the Bank consents, in writing, to continued usage notwithstanding the default. Additionally, if Debtor fails to cure any default(s) as set forth herein for which it has a right to cure, Debtor shall lose the benefit

---

[3] Ms. Moriarty and Activity Daily Living Services, Inc. are not Debtors in this Bankruptcy Case, however, they nonetheless agree to the terms of this Consent Order, and further, this Consent Order serves as a settlement agreement of the same terms between the parties.

- 5 -

of the discounted payoff and the Bank shall be permitted to recover the full outstanding balance owed in connection with the Loan, plus any additional sums that hereinafter accrue.

23. Further Documentation. All parties to this agreement agree to execute such other and further documents as may be necessary for the Bank to internally administer the terms and conditions of this Order, as determined by the Bank. Such documents shall be reasonably acceptable to all parties.

**24. TIME IS OF THE ESSENCE- TIME IS OF THE ESSENCE WITH RESPECT TO ALL OF THE DEBTOR'S DUTIES AND OBLIGATIONS UNDER THIS AGREEMENT.**

25. Authority and Consent. All parties who have consented to the entry of this Order expressly acknowledge and confirm that they have freely chosen to settle their dispute as described above, and that they are fully authorized to enter into the settlement agreement described above, subject only to the approval of the Bankruptcy Court.

26. No Waiver of Breaches of this Agreement. Nothing in the releases set forth above shall constitute a waiver by any party hereto of any other party's breach(es) of this agreement.

27. The Court finds that the resolution set forth above is fair, reasonable, and in the best interests of the estate and its creditors. As such, the Court hereby authorizes and approves the resolution set forth above.

28. The parties are excused from complying with the provisions of paragraphs 10 and 11 of the Emergency Order.

29. Under the circumstances of this case, the Court determines that this Order is immediately effective and not subject to the "14 day stay" provisions of Federal Rule of Bankruptcy Procedure 6004(h) or any other applicable law that would cause this Order to not become immediately effective.

30. The Debtor shall serve a copy of this Order upon all parties in interest and file a Certificate of Service.

**Consented to by**:

| McGRATH McCALL, P.C. | ROBERT O LAMPL LAW OFFICE |
|---|---|
| By: /s/ Roger P. Poorman<br>Roger P. Poorman, Esquire<br>PA ID # 206562<br>Four Gateway Center, Suite 1040<br>444 Liberty Avenue<br>Pittsburgh, PA 15222<br>Telephone: (412) 281-4333<br>Email: rpoorman@lenderlaw.com<br>(Counsel for First National Bank of Pennsylvania) | By: /s/ Sy O. Lampl<br>Sy O. Lampl, Esquire<br>PA ID #324741<br>Benedum Trees Building<br>223 Fourth Avenue, 4th Floor<br>Pittsburgh, PA 15222<br>Telephone: (412) 392-0330<br>Email: slampl@lampllaw.com<br>(Counsel for Moriarty Consultants, Inc.) |
| _(signature)_<br>Arlinda Y. Moriarty[4] | ACTIVITY DAILY LIVING SERVICES, INC.[5]<br>By: _/s/ Chelsea M Brown_<br>Print Name: Chelsea Brown<br>Print Title: Director of Programs |

BY THE COURT:

_(signature)_
THOMAS P. AGRESTI
UNITED STATES BANKRUPTCY JUDGE

---

[4] Signature page to be filed as a supplement upon receipt.
[5] See footnote 4.

- 7 -